Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. On the date of plaintiffs alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer from 25 January 1999 to 8 February 1999.
3. Plaintiffs average weekly wage was $412.00.
4. A set of five exhibits, identified in paragraph five of the parties Pre-Trial Agreement and attached thereto, is admitted into evidence.
5. A videotape, marked as Stipulated Exhibit Number Two, is admitted into evidence.
6. A set of plaintiffs medical records received from plaintiffs counsel on 14 November 1999 is admitted into evidence.
In addition, the parties stipulated to admit a packet of medical records into evidence before the Full Commission
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-nine year old high school graduate. Plaintiff had also earned a diploma for completing a course of study to become a professional secretary.
2. Plaintiffs employment history included work as a quality control inspector for a textile manufacturer. For six years beginning in 1977, she was employed as a sewing machine operator. During this employment, plaintiff experienced symptoms that were consistent with having carpal tunnel syndrome. She was next employed as a machine operator, utility person, and shipping clerk for an employer that made plastic six-pack rings.
3. Within the eight-year period immediately preceding her employment by defendant, plaintiffs body weight increased by approximately one hundred pounds. On 25 January 1999, the date she began her employment with defendant, she weighed approximately two hundred and fifty pounds.
4. Defendant hired plaintiff to work in its syringe packing department. Beginning on 25 January 1999, plaintiff participated in orientation programs for three days. During this period, she did not perform any duties in the syringe packing department. Plaintiff began working in the syringe packing department on 28 January 1999.
5. Plaintiffs assigned duties consisted of loading plastic syringes into a machine, placing the syringes into trays after they emerged from the machine and, after the syringes were packaged, placing the syringe packages into boxes. Stipulated Exhibit Two accurately depicts the frequency of the loading, "traying, and packaging activities plaintiff performed. The syringe processing line was never set to process more than forty syringes per minute. Often the processing line was set at a slower pace to decrease the number of rejected syringes. None of plaintiffs duties involved forceful gripping with her hands.
6. Shortly after beginning the performance of her duties on 28 January 1999, plaintiff began experiencing pain and numbness in her hands. On 1 February 1999, after about ten minutes of traying the smaller B-type syringes, plaintiff complained to a co-employee, Ms.Medlin, that her hands were numb.
7. On 2 February 1999, plaintiff worked loading and traying syringes. She also received training in packaging and casing syringes. Plaintiff performed these same duties on the following three days.
8. While employed by defendant, plaintiff alternated tasks every hour and fifteen minutes.
9. On 11 February 1999, plaintiff presented to her family physician, David King, M.D., complaining of bilateral thumb pain and hand numbness beginning approximately ten days earlier, or on 1 February 1999. Plaintiff did not report to Dr. King that her symptoms began within the first hour that she began her duties in the syringe packing department. Dr. King tentatively diagnosed plaintiff as having carpal tunnel syndrome, right greater than left, and excused plaintiff from work for one week.
10. When plaintiff returned to Dr. King on 18 February 1999, she reported that her symptoms had improved. On 23 February 1999, plaintiff presented to Scott S. Sanitate, M.D., upon referral by defendant. Dr. Sanitate ordered nerve conduction studies that confirmed Dr. Kings diagnosis of mild bilateral carpal tunnel syndrome.
11. Plaintiff has bilateral carpal tunnel syndrome. Her obesity contributed to the development of this condition. Dr. Kings opinion regarding the causation of plaintiffs bilateral carpal tunnel syndrome is not persuasive because he relied on inaccurate patient history. Plaintiffs employment with defendant did not cause or significantly contribute to the development of the disease.
12. During the seven years preceding plaintiffs employment with defendant, no other employee assigned to the syringe packing department had developed carpal tunnel syndrome.
13. The evidence fails to establish that plaintiffs bilateral carpal tunnel syndrome was due to causes and conditions that were characteristic of and peculiar to her employment with defendant.
14. The greater weight of the evidence shows that plaintiffs job did not place her at an increased risk for developing bilateral carpal tunnel syndrome as compared to the risk faced by the general working population.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove that her bilateral carpal tunnel syndrome developed due to causes and conditions which are characteristic of and peculiar to her employment with defendant, but excluding all ordinary diseases of life to which the general public is equally exposed. G.S.97-53(13); Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189
(1979).
2. Plaintiff has failed to prove that her employment placed her at an increased risk of developing her bilateral carpal tunnel syndrome as compared to members of the general public not so employed. Rutledge v.Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim for compensation under the Act is DENIED.
2. Each side shall bear its own costs, except that defendant shall pay to Dr. Sanitate $265.00 as an expert witness fee.
 S/________________________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_________________ LAURA K. MAVRETIC COMMISSIONER